**In re David H. KALDAHL, Five Lake (56–357–P), Otter Tail County, Building of an Unauthorized Excavated Channel and Removal of Unauthorized Fill Below the Ordinary High Water Mark of Five Lake.**

No. C1–87–1486.

Court of Appeals of Minnesota.

Feb. 2, 1988.

Richard C. Hefte, Rufer & Hefte, Fergus Falls, for Kaldahl.

Hubert H. Humphrey, III, Atty. Gen., Augustus W. Clapp, III, Sp. Asst. Atty. Gen., St. Paul, for respondent Dept. of Natural Resources.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and IVERSON*, JJ.

## OPINION

NIERENGARTEN, Judge.

The relator property owner previously was acquitted of misdemeanor charges for altering a cross-section of public waters without obtaining a permit. The relator now contends the Department of Natural Resources is barred by the doctrines of res judicata and double jeopardy from ordering restoration of the property in a civil proceeding. We affirm.

## FACTS

Relator David Kaldahl is the principal stockholder and officer of Fair Hills, Inc. which operates a resort on Five Lake in Otter Tail County. The corporation is the sole riparian landowner on Five Lake which has no public access. Kaldahl purchased the land surrounding Five Lake from Willian Bollenbach sometime in 1976.

In a 1949 condemnation appeal, the Minnesota Supreme Court held Five Lake was "not a public body of water upon which the public has a right to hunt and fish" because the lake was not navigable under the then-prevailing federal test of navigability. *See State v. Bollenbach,* 241 Minn. 103, 123, 63 N.W.2d 278, 290 (1954). Kaldahl claims he relied on that decision when he purchased the lake property.

Five Lake was given a shoreland management classification by the Commissioner of the Department of Natural Resources (DNR) sometime prior to late 1984. In October and November 1984, Kaldahl dug a channel across a peninsula on Five Lake. In November 1984, a DNR officer

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

issued a citation to Kaldahl for altering a cross-section of protected waters without a permit in violation of Minn.Stat. § 105.42 (1984).

The district court noted that section 105.42 only applies to public waters and concluded Five Lake "is a private body of water and has been a private body of water since the [*Bollenbach*] decision" in 1954. The court dismissed the criminal complaint. The State appealed. We held the appeal was barred by the double jeopardy clauses of the state and federal constitutions because the district court's conclusion about Kaldahl's violation of section 105.42 "was a factual determination of [Kaldahl's] guilt or innocence" from which the State could not appeal. *See State v. Kaldahl,* 381 N.W.2d 502, 503 (Minn.Ct.App.1986). We drew no conclusions on whether Five Lake was a private body of water not subject to state regulation under chapter 105.

While Kaldahl's case was on appeal, the Commissioner issued a restoration order which found that Five Lake is a "public water" because it "has been designated a public water by the Commissioner pursuant to Minnesota Statutes § 105.37, subdivision 14 and § 105.391." The Commissioner also found that Kaldahl violated DNR administrative rules and ordered Kaldahl to fill the channel, remove the fill below the ordinary high water mark, and restore the shoreline and channel to the condition which existed prior to 1984.

Kaldahl contested the restoration order but the administrative law judge concluded Five Lake is a "public water" within the meaning of Minn.Stat. § 105.37, subd. 14 (1984), and that the *Bollenbach* decision does not preclude the Commissioner from exercising regulatory control over the lake. The administrative law judge also concluded: "A determination * * * that Five Lake is public waters of the State is not prohibited by constitutional principles of double-jeopardy, res judicata, or collateral estoppel."

The Commissioner then found Five Lake is a "public water" under Minn.Stat. § 105.37, subd. 14 and that the DNR may exercise regulatory jurisdiction. The mat-

ter was remanded to the administrative law judge which again concluded Kaldahl violated chapter 105 by digging the channel and altering the shoreline of Five Lake. Kaldahl was ordered to comply with the Commissioner's restoration order.

Kaldahl filed exceptions to the recommended order and asserted post-*Bollenbach* legislation could not affect his property rights. Kaldahl also contended the criminal proceedings against him precluded enforcement of the restoration order because of double jeopardy, res judicata, and collateral estoppel principles. The Commissioner adopted the administrative law judge's findings and conclusions and ordered Kaldahl to comply with the original restoration order. This court granted Kaldahl's petition for a writ of certiorari.

## ISSUE

Do res judicata or double jeopardy principles bar the Commissioner from issuing a restoration order to the relator under Minn. Stat. ch. 105 (1984)?

## ANALYSIS

Kaldahl admits digging the channel across the peninsula on Five Lake without a permit. Because the dispute involves only the interpretation and application of law by an administrative agency, we need not defer to the agency's conclusions which are "based on legal rather than factual considerations." *No Power Line, Inc. v. Minnesota Environmental Quality Council,* 262 N.W.2d 312, 320 (Minn.1977).

Kaldahl does not challenge the Commissioner's determination that Five Lake is a "public water" under Minn.Stat. § 105.37, subd. 14 (1984) or contest the Commissioner's conclusion that the *Bollenbach* decision does not preclude the DNR from regulating Five Lake. However, as a preliminary matter, we conclude the *Bollenbach* decision does not preclude the Commissioner from exercising regulatory jurisdiction over Five Lake. The court's conclusion in *Bollenbach* about the nonpublic status of Five Lake was based on the lake's navigable characteristics. The legislature subsequently enacted a statutory definition of

"public waters" and subjected Minnesota's waters and wetlands to the control of the state. *See* Minn.Stat. §§ 105.37, subd. 14, 105.38 (Supp.1979).

### Res Judicata Claim

■ Kaldahl contends his prior acquittal on criminal charges prohibits the Commissioner from enforcing the restoration order in civil proceedings because the criminal and civil proceedings are based on the same operative facts. A civil action is a proceeding "different in its nature" from a criminal indictment.

> The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. * * * That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled.

*Helvering v. Mitchell,* 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938).

The burden of proof in Kaldahl's criminal misdemeanor trial[1] was different from the burden of proof in the administrative proceeding which resulted in the Commissioner's restoration order. "[T]he standard of proof in misdemeanor cases is proof beyond a reasonable doubt." *State v. Pazderski,* 352 N.W.2d 85, 87 (Minn.Ct.App. 1984). Unless otherwise provided by substantive law, the facts at issue in administrative hearings and contested cases must be proven by "a preponderance of the evidence." *See* Minn.R. 1400.7300, subp. 5 (1985); *In re Schultz,* 375 N.W.2d 509, 514 (Minn.Ct.App.1985).

Kaldahl notes that the restoration order cites the same unlawful conduct under Minn.Stat. § 105.42 which was the basis for the criminal complaint. Although the forbidden conduct under section 105.42 is statutorily classified as a misdemeanor and the citation was issued by a DNR officer, the Commissioner did not prosecute the misdemeanor complaint. Kaldahl was charged and prosecuted by the Otter Tail County Attorney; the Commissioner's restoration order arose out of a separate administrative proceeding. *Cf. State v. House,* 291 Minn. 424, 192 N.W.2d 93 (1971) (DWI proceedings and civil proceedings under the implied consent laws were separate actions involving separate parties). The mere fact that Chapter 105 contains both criminal and civil sanctions for altering public waters does not necessarily preclude separate criminal and civil actions based on the same conduct. *See United States v. United States Gypsum Co.,* 51 F.Supp. 613, 614 (D.D.C.1943) (separate criminal and civil actions could be brought under the Sherman Antitrust Act).

The criminal and civil proceedings were conducted under different burdens of proof and were conducted for different purposes. Consequently, the Commissioner was not precluded on res judicata grounds from issuing the restoration order. *Cf. Standard Sanitary Manufacturing Co. v. United States,* 226 U.S. 20, 52, 33 S.Ct. 9, 16, 57 L.Ed. 107 (1912) (separate civil and criminal suits under the Sherman Antitrust Act could be brought "simultaneously or successively").

### Double Jeopardy Claim

■ Kaldahl contends he may not be subjected to civil sanctions for the same conduct which subjected him to criminal punishment, and argues enforcement of the restoration order constitutes double jeopardy. Criminal and civil sanctions may be imposed for the same act or omission. *See State v. Enebak,* 272 N.W.2d 27, 30 (Minn. 1978) ("the prohibition against double jeopardy does not preclude separate civil and criminal proceedings based on the same incident"). The double jeopardy clause does not apply unless a civil sanction is "intended as punishment, so that the proceeding is essentially criminal." *See Helvering,* 303 U.S. at 398–99, 58 S.Ct. at 633;

---

1. Kaldahl originally was cited for altering a cross-section of public water without a permit in violation of Minn.Stat. § 105.42 (1984). The alleged violation was a misdemeanor punishable by imprisonment and/or fine. *See* Minn. Stat. §§ 105.541(1), 609.02, subd. 3, 609.03(3) (1984).

see also *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984).

Civil enforcement of a remedial sanction does not constitute double jeopardy. *See Helvering*, 303 U.S. at 404, 58 S.Ct. at 635–36; *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–49, 63 S.Ct. 379, 386, 87 L.Ed. 443 (1943). Chapter 105 established state control over public waters and wetlands "[i]n order to conserve and utilize the water resources of the state in the best interests of the people of the state, and for the purpose of promoting the public health, safety and welfare." *See* Minn. Stat. § 105.38 (1984). This is remedial legislation which grants the Commissioner authority to impose certain civil sanctions in order to promote water resources conservation and wildlife habitat preservation. *See, e.g.*, Minn.Stat. §§ 105.39, 105.392 (1984). The remedial nature of chapter 105 also is reflected in the civil administrative procedures for contesting DNR actions that affect property owners. *See* Minn.Stat. §§ 105.461–.462, 105.44, subd. 3.

The Commissioner's restoration order clearly is remedial in nature because it does nothing more than order an unlawfully altered cross-section of public water restored to its previous condition. *See* Minn.Stat. §§ 105.461–.462 (the Commissioner may issue restoration orders ordering individuals "to take any action necessary to restore the public waters or beds thereof to the condition existing before unlawful activities, if any, were undertaken"). The Commissioner's authority to order restoration of altered waters and cross-sections is not necessarily conditioned on criminal liability; the Commissioner only need determine whether public waters were altered without a permit. *See* Minn.Stat. § 105.462.

Since the enforcement order and the authorizing statute are remedial in nature and not punitive, enforcement of the order will not subject Kaldahl to double jeopardy even though he was acquitted of criminal charges based on the same operative facts.

## DECISION

The commissioner is not precluded by res judicata principles from ordering the rela-

tor to restore the altered cross-section of public waters because the burdens of proof in the criminal misdemeanor trial and the civil enforcement proceeding are different. Enforcement of the restoration order does not constitute double jeopardy because the restoration order is remedial in nature rather than punitive.

Affirmed.