GREAT AMERICAN INSURANCE
COMPANY, Appellant,

v.

Ted GOLLA, Respondent,

Dale Golla, et al., Respondents.

No. C2–92–1057.

Court of Appeals of Minnesota.

Dec. 15, 1992.

Tony R. Krall, Mark D. Covin, Hanson Lulic & Krall, Minneapolis, for appellant.

Steven R. Schwegman, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for Ted Golla.

Edward L. Pardee, White Bear Lake, for Dale Golla, et al.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Great American Insurance Company paid property damage and uninsured motorist benefits to its insured and then asserted a subrogation claim against respondents Ted, Dale and Marguerite Golla. Great American's original complaint alleged a tractor owned and operated by Dale Golla and a pickup truck owned and operated by Ted Golla were involved in the accident. Following investigation and discovery, Great American amended its complaint to allege the tractor was owned by Ted Golla and operated by Dale and Marguerite Golla and was the only motor vehicle involved in the accident.

Ted Golla moved for summary judgment. In response to Ted Golla's motion, Great American asserted the pickup truck and the tractor were involved in the accident. The trial court granted Ted Golla's motion for summary judgment. We affirm.

## FACTS

Ted Golla is Dale Golla's father. Marguerite Golla is Dale Golla's wife. On October 4, 1987, Dale Golla and his family visited his parents' farm, where Dale used Ted Golla's tractor. In the late afternoon, after a few hours in the field, the tractor failed to start. Dale Golla assumed the tractor needed a jump-start, so he and Marguerite Golla drove back to the farm in Marguerite Golla's car to get Ted Golla's pickup truck and jumper cables. When Dale and Marguerite Golla were unable to get the tractor started using jumper cables, they decided to tow the tractor back to the farm using the pickup truck. Dale Golla drove the pickup while Marguerite Golla steered the tractor.

Dale and Marguerite Golla towed the tractor to the crown of a hill on Todd County Road 14, a two-lane highway. Dale Golla intended to roll the tractor down the hill and "pop" the clutch to get the tractor

started. The tractor was one-half to three-quarters on the shoulder of the road, facing west, with one wheel on the pavement of County Road 14.

Dale Golla unhooked the tractor from the pickup truck to put the truck behind the tractor for additional security. He turned the pickup around and was heading east on County Road 14 to get behind the tractor when he saw a vehicle heading toward him from the east. He flashed his headlights at the approaching vehicle to warn the driver to slow down. The driver of the other vehicle, Leslie Bass, did not slow down, however, and struck the back of the tractor. At the time of the accident, Marguerite Golla was sitting on the tractor.

Leslie Bass' wife was injured in the collision and the Basses' insurer, Great American, paid $3,040.96 in property damage benefits and $15,000 in uninsured motorist benefits to the Basses. Great American sought subrogation against the Gollas.

In its initial complaint, Great American asserted:

That at all times pertinent hereto, Dale Lee Golla was the owner and operator of a 1960 Case Tractor.

\* \* \* \* \* \*

That at all times pertinent hereto, Defendant Ted Golla was the owner and operator of a pickup truck.

\* \* \* \* \* \*

That on or about October 4, 1987, the Defendants, and each of them, so negligently operated their motor vehicles so as to cause them to collide with a vehicle owned and operated by Plaintiff's insured.

Great American subsequently moved to amend its complaint. In its motion, Great American stated that through discovery it had determined the tractor was involved in the accident, the pickup truck was not involved in the accident, the tractor was owned by Ted Golla, and Marguerite Golla was on the tractor at the time of the accident. The trial court granted the motion. Great American's amended complaint made no mention of the pickup truck. Great American also moved for summary judg-

ment on the issue of whether it was entitled to subrogation.

Ted Golla then moved for summary judgment, asserting the tractor was not a motor vehicle for purposes of the Safety Responsibility Act and Great American was not entitled to subrogation unless it could prove a duplicate recovery. In response to Ted Golla's motion, Great American asserted that both the tractor and the pickup were involved.

The trial court granted Ted Golla's motion for summary judgment. Great American's claim that the pickup truck was involved was not addressed. Ted Golla's motion to amend the order for judgment to include the language of Minn.R.Civ.P. 54.02 was granted. Great American appeals.

### ISSUES

1. Did the trial court err in holding the Minnesota Safety Responsibility Act does not apply to Ted Golla's tractor?

2. Did Great American adequately preserve its claim that Ted Golla's pickup truck was involved in the accident?

### ANALYSIS

*Standard of Review*

Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

■ In the present case, the trial court determined that the tractor involved in the accident was not a motor vehicle within the meaning of the Safety Responsibility Act. Interpretation of a statute is a question of law which this court reviews de novo on appeal. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

1. *Motor Vehicle*

The Minnesota Safety Responsibility Act provides:

Whenever any motor vehicle shall be operated within this State, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

Minn.Stat. § 170.54 (1988). The Safety Responsibility Act does not currently contain a definition of the term "motor vehicle." The Act formerly defined the term "motor vehicle" to mean

every self-propelled vehicle which is designed for use upon a highway, including trailers and semi-trailers designed for use with such vehicles, *except* traction engines, road rollers, *farm tractors,* tractor cranes, power shovels, and well-drillers.

Minn.Stat. § 170.21, subd. 5 (1972) (emphasis added). This section of the Safety Responsibility Act was repealed in 1974 when the legislature adopted the No–Fault Act. 1974 Minn.Laws ch. 408, § 33. The No–Fault Act contains the following definition:

"Motor vehicle" means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, and includes a trailer with one or more wheels, when the trailer is connected to or being towed by a motor vehicle.

Minn.Stat. § 65B.43, subd. 2 (1988).

■ In repealing the Safety Responsibility Act's definition of "motor vehicle" and simultaneously replacing it with the definition found in section 65B.43, subd. 2, the legislature clearly intended to replace one definition with the other. *See In re Eystad,* 214 Minn. 490, 8 N.W.2d 613 (1943) (when new statute shows legislature intended to substitute its provisions for provisions previously in place, new statute su-

persedes prior provisions and repeals prior laws).

The No–Fault Act's definition of "motor vehicle" requires that the vehicle be designed for use primarily upon public roads. Minn.Stat. § 65B.43, subd. 2. Although a tractor *can* be used on a public road, it is designed primarily for use in fields. In fact, chapter 169 defines "farm tractor" as

> every motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines, and other implements of husbandry.

Minn.Stat. § 169.01, subd. 8 (1988).

■ To qualify as a motor vehicle under the No–Fault Act's definition, a vehicle must also be *designed* for the transportation of persons or property. A tractor is not designed to transport persons or property; it is designed to draw farm implements. Typically, the only person a farm tractor carries is its operator.

In addition, the No–Fault Act's definition of motor vehicles includes every vehicle which is required to be registered pursuant to chapter 168. Chapter 168 specifically exempts tractors from its scope. Minn. Stat. § 168.012, subd. 2 (1988).

Great American contends the definition of "motor vehicle" found at Minn.Stat. § 169.01, subd. 3 (1988) should apply. Chapter 169 covers traffic regulations. Some jurisdictions have held that traffic safety statutes apply to tractors while being driven on public roads. *See Heath v. Commonwealth*, 761 S.W.2d 630 (Ky.App. 1988) (drunk driving statute includes driving tractor while drunk); *Davis v. Gamble*, 55 N.C.App. 617, 286 S.E.2d 629 (1982) (farm tractor is "motor vehicle" and must obey rules of road); *see also Melby v. Commissioner of Pub. Safety*, 367 N.W.2d 527 (Minn.1985) (implied consent law applies to snowmobile operated on street or highway). The history of the No–Fault Act, however, convinces us that the definition of "motor vehicle" found in the No–Fault Act is more appropriately applied to the Safety Responsibility Act than the definition found in chapter 169. *See Stepec v. Farmers Ins. Co.*, 301 Minn. 434, 222 N.W.2d 796 (Minn. 1974); *State Auto. & Cas. Underwriters v.*

*Runia,* 363 N.W.2d 818 (Minn.App.1985) (snowmobile not within no-fault definition of motor vehicle for purposes of Safety Responsibility Act).

### 2. Involved Vehicle

In the alternative, Great American asserts that the pickup truck used to pull the tractor onto the highway is a motor vehicle involved in the accident. In moving to amend its complaint, Great American asserted "that the pickup truck which was believed to be present at the accident scene was not involved in the accident." Subsequently, in response to Ted Golla's motion for summary judgment, Great American took the position that the pickup truck *was* involved in the accident.

■ Great American, having disavowed its claim that the pickup truck was involved, cannot "revive" that claim by the simple expedient of asserting it in opposing summary judgment. Great American's motion to amend its complaint to claim only the tractor was involved was granted. The amended complaint framed the issues for the trial court. A party is bound by its pleadings unless other issues are litigated by consent. *Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 234, 67 N.W.2d 400, 403 (1954). The Gollas did not consent to litigate the question whether the pickup truck was involved. The trial court did not err in not considering Great American's claim that the pickup was involved.

### DECISION

A tractor is not a motor vehicle for purposes of the Safety Responsibility Act. Great American, having amended its complaint to eliminate any claim that the pickup truck was involved, cannot litigate the issue except by consent. There being no consent, the trial court did not err in not considering the question.

Affirmed.