*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0706**

Corval Constructors, Inc.,
Respondent,

vs.

FPD Power Development, LLC,
Appellant.

**Filed March 23, 2015
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CV-12-4231

Ernest F. Peake, Patrick J. Lindmark, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, Minnesota (for respondent)

Mark J. Heley, John A. Markert, Stephen F. Buterin, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**LARKIN**, Judge

In this dispute stemming from the construction of a power-generating station, appellant subcontractor challenges (1) the district court's grant of summary judgment to

respondent general contractor and its summary dismissal of appellant's counterclaim, (2) the district court's imposition of a sanction against appellant for abusing the subpoena process, and (3) the district court's award of certain costs to respondent. We affirm.

**FACTS**

Respondent Corval Constructors, Inc. (Corval) contracted with Northwestern Energy Corporation to serve as a general contractor for the construction of a power-generating station in Montana. Corval subcontracted part of the work to appellant FPD Power Development, LLC (FPD). Under the subcontract, FPD agreed to provide electrical services and equipment and to install the equipment.

Although FPD agreed to a fixed price, article six of the subcontract provides for additional compensation in the event that Corval made project changes during construction. The subcontract refers to these changes as "directed changes" and sets forth a detailed procedure that FPD had to follow to obtain additional compensation for such changes. Of note here, FPD had to submit a written request for a "change order" to Corval within three days of a directed change. The subcontract states that a request for additional compensation that "does not fully comply with the [subcontract] shall not be considered a [c]hange [r]equest under the [s]ubcontract." The subcontract also states that FPD is not eligible for additional compensation unless FPD received a written change order from Corval and that if FPD performed work related to a change without a written change order, "[FPD] shall be deemed to have knowingly and intentionally waived and released all claims for additional compensation . . . regardless of any written or verbal protests or claims by [FPD] to the contrary," and "[Corval] shall be under no obligation

2

to . . . pay or reimburse [FPD] for any cost or expense related to an [u]napproved [c]hange."

During the course of the project, substantial changes were necessary. Ultimately, 11 plan revisions became part of the subcontract. FPD submitted nearly 150 change-order requests, and Corval approved most of them. Approximately one-third of the change-order requests were approved and paid even though FPD did not adhere to the three-day notice requirement and the parties did not adhere to other aspects of the change-order process in the written subcontract.

Weeks after the project was basically complete, FPD submitted several change-order requests, seeking additional compensation. Many of the items for which FPD sought compensation had been the subject of dispute and discussion during the project and some had been partially resolved. Corval denied the change-order requests, partly because FPD failed to follow the change-order process in article six of the subcontract.

FPD filed a construction lien against the property on which the power station was built. Later, Corval commenced the present action for breach of contract and declaratory judgment, seeking a declaration that it does not owe FPD additional compensation under the subcontract. FPD counterclaimed, asserting breach-of-contract, unjust-enrichment, account-stated, and declaratory-judgment claims. The breach-of-contract and declaratory-judgment claims are at issue here.[1]

---

[1] The district court dismissed FPD's unjust-enrichment claim under Minn. R. Civ. P. 12. And FPD notified the district court, in summary-judgment proceedings, that the court could dismiss its account-stated claim. FPD does not challenge the district court's dismissal of those claims.

3

The breach-of-contract count of the counterclaim states, in relevant part, that:

> 36. FPD complied with the terms of the Contract in all respects, including those terms relating to making a claim for additional compensation. FPD submitted various change order requests to Corval for additional compensation due to the issues listed in the paragraphs above, as well as for other reasons. Corval approved some of FPD's change order requests[,] but the majority were not approved.
>
> 37. Despite repeated demands, Corval fails and refuses to approve and pay FPD for the legitimate change order requests made by FPD and therefore is in breach of the terms of the Contract.

The declaratory-judgment count of the counterclaim states that Corval tendered a payment bond as substitute security for the construction lien FPD filed and that

> FPD is entitled to declaratory relief determining that Corval is in breach of its subcontract agreement with FPD, that FPD is entitled to recover damages under its subcontract agreement[,] . . . and that FPD is entitled to recover under the Bond any portion of its judgment against Corval that remains unpaid following entry of final judgment.

Corval moved to dismiss FPD's counterclaim under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. As to FPD's breach-of-contract claim, Corval argued that "the subcontract is for a fixed price that can only be modified through written change order requests made prior to completing the work" and that FPD "failed to provide Corval with any written notice of [the] claimed additional costs until several months after all of the work was completed." In a written memorandum responding to Corval's motion to dismiss, FPD argued that it had properly pleaded the elements of breach of contract. FPD also argued that Corval's argument "is not supported by the language of the Subcontract" because the "plain language of [sections]

4

6.4.1 and 6.4.2 contradicts Corval's claim that FPD cannot collect for any additional work that was not authorized by a change order *prior* to the work proceeding," and that the "plain and ordinary meaning of the language in [s]ection 5.3 states that FPD *shall* be provided an equitable adjustment for delays and acceleration."

At the hearing on Corval's motion to dismiss, the district court agreed with Corval that FPD's pleading did not contain a "common course of dealing" theory. But the district court denied Corval's motion to dismiss FPD's breach-of-contract and declaratory-judgment claims, stating, "At this point, FPD has pled the [s]ubcontract, timely compliance with all contractual terms, and Corval's breach."

After discovery was complete, Corval moved for summary judgment. Corval argued that FPD "ignore[d] material terms of the subcontract" and "all of [its] claims for extra compensation are contractually barred because the requests were not timely and FPD had already completed the work prior to obtaining written authorization for the additional compensation." In its responsive brief, FPD did not argue that it followed the change-order process in article six of the subcontract, as it had when defending Corval's motion to dismiss under rule 12. Instead, FPD argued equitable-estoppel, waiver, and contract-modification theories. FPD asserted that "Corval regularly and repeatedly ignored and waived the requirements of [s]ection 6.4 with respect to FPD's changes and . . . it actively encouraged—even demanded—that FPD do the same." FPD therefore argued that "Corval is estopped from enforcing terms of [the] subcontract to defeat FPD's claims"; "Corval's actions and representations modified the [change-order process] thus

5

Corval is estopped from enforcing the requirements of section 6.4 of the subcontract"; and "Corval unilaterally waived enforcement of section 6.4.2."

Corval opposed FPD's reliance on equitable-estoppel, waiver, and contract-modification theories, arguing that they were not raised in FPD's pleading. At the summary-judgment hearing, the district court questioned whether FPD had raised modification or equitable estoppel in its counterclaim. FPD suggested that, if the court was concerned that Corval was not on notice of those theories, FPD should be allowed to amend its pleading to clarify the theories.

The district court granted Corval's motion for summary judgment. In doing so, the district court explained that its order denying Corval's motion to dismiss under rule 12 was based on "FPD's written and oral representations that it plead[ed] nothing more than a claim for damages based on its compliance and Corval's breach of the contract as written" and that its order "is the law of the case." The district court noted that "FPD did not plead estoppel properly and never pled waiver." The district court also noted that "[a]t no time did FPD move to amend its answer or its counterclaim" and that permitting FPD to amend would prejudice Corval and "be an exercise in futility." The district court therefore refused to consider FPD's equitable-estoppel, waiver, and contract-modification theories. The district court also refused to consider testimony that FPD offered from a former Corval employee, W.K., on the ground that FPD abused the subpoena process.

The district court dismissed FPD's counterclaim and ruled that, "with [FPD's] counterclaim dismissed, [Corval] is entitled to the relief requested in its complaint." The district court therefore granted summary judgment for Corval, declaring that "[FPD] is

barred from receiving any additional compensation in connection with the Mill Creek Generating Station project." The district court later awarded costs to Corval, including reimbursement for the expense of securing a bond. This appeal follows.

## D E C I S I O N

FPD challenges (1) the district court's grant of summary judgment for Corval, (2) the district court's imposition of a sanction against FPD, and (3) the district court's award of costs. We address each issue in turn.

## I.

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). Appellate courts "review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted).

At the summary-judgment hearing, FPD conceded that it had not followed the procedure necessary to obtain additional compensation under the subcontract as written and "that if FPD is held strictly to the [s]ubcontract as written, Corval's motion must be granted." FPD therefore relied on equitable-estoppel, waiver, and contract-modification theories to defeat summary judgment. The district court refused to consider those

7

theories, partly reasoning that it had denied Corval's request for dismissal under rule 12 "based upon FPD's written and oral representations that it plead[ed] nothing more than a claim for damages based upon its compliance and Corval's breach of the contract as written." The district court noted that FPD did not plead "course of conduct equitable estoppel" or waiver and that it would not allow amendment to include those theories at that point in the litigation.

When issues beyond the scope of the pleadings are raised for the first time in a memorandum in opposition to summary judgment, the district court need not consider them. *See Great Am. Ins. Co. v. Golla*, 493 N.W.2d 602, 605 (Minn. App. 1992) (holding that where a party attempted to revive a claim that it had removed from a complaint, the district court did not err by not considering the claim when it was raised in opposition to summary judgment). That is because the pleadings frame the issues for the district court, and a party is bound by its pleadings unless other issues are litigated by consent. *Id*.

As the district court noted, FPD's response to Corval's summary-judgment motion "sharply departs from its earlier [rule-12] assertion of contract compliance." In response to Corval's motion to dismiss under rule 12, FPD argued that it adequately pleaded compliance with the plain language of the subcontract. In ruling on Corval's rule-12 motion to dismiss, the district court noted that the parties' dispute centered on "whether the subcontract provides one (the change-order process) or more than one way for FPD to receive additional compensation due to changes in the work during contract performance," referring to FPD's argument that equitable compensation is possible

8

outside of the change-order process. The district court concluded that the subcontract is not ambiguous and that "compliance with the change-order process is [FPD's] sole means to secure any equitable or additional compensation." Notably, the district court's memorandum explaining its rule-12 ruling does not mention equitable estoppel, waiver, or contract modification. The district court ruled that "[a]t this point, FPD has pled the [s]ubcontract, timely compliance with all contractual terms, and Corval's breach."

The district court's summary-judgment order explains its rule-12 ruling as follows: "The motion to dismiss was denied based on FPD's written and oral representations that it plead[ed] nothing more than a claim for damages based on its compliance and Corval's breach of the contract as written." The district court's construction of its rule-12 ruling is consistent with its earlier explanation of the rule-12 issues and its analysis of those issues. *See Tarlan v. Sorensen*, 702 N.W.2d 915, 919 (Minn. App. 2005) ("[A] district court's construction of its own ruling is given great weight on appeal"). Because the district court previously ruled that FPD's pleading adequately set forth a breach-of-contract claim based solely on the contract as written and because FPD did not obtain leave to amend its pleading to include the equitable-estoppel, waiver, and contract-modification theories that it relies on in defense of summary judgment, the district court did not err by refusing to consider those theories. *See Golla*, 493 N.W.2d at 605.

Nor did the district court err by refusing to grant, sua sponte, leave to amend in response to FPD's suggestion, at the summary-judgment hearing, that amendment would be proper if necessary to clarify its pleading. "A party may amend a pleading by leave of court, and amendments should be freely granted, except where to do so would result in

9

prejudice to the other party. The trial court has wide discretion to grant or deny an amendment, and its action will not be reversed absent a clear abuse of discretion." *Fabio*, 504 N.W.2d at 761 (citations omitted). "The liberality to be shown in the allowance of amendments depends in part upon the stage of the action and in a great measure upon the facts and circumstances of the particular case." *Dale v. Pushor*, 246 Minn. 254, 262, 75 N.W.2d 595, 601 (1956).

Although FPD did not move for leave to amend, the district court indicated that it would not allow amendment, noting that at "this late stage" discovery had ended, "all deadlines in the scheduling order [had] passed and the case [was] supposed to be trial ready." The district court noted that after the discussion at the rule-12 hearing, in which the district court agreed with Corval that FPD's complaint did not set forth a common-course-of-dealing theory, and the court's order denying Corval's rule-12 motion, "FPD was on notice that both [Corval] and the court treated the counterclaim as a cause of action on the contract as written. Moreover, FPD was on notice that Corval considered the pleading deficient as to any claim for course of conduct estoppel." The district court observed that "FPD had plenty of time to file a motion to amend" and that it was "surprising that FPD never sought to amend its counterclaim." But the district court reasoned that at the time of the summary-judgment hearing, "Corval would be substantially prejudiced by way of time and expense if an amendment is permitted," because permitting an amendment would require reopening discovery, warrant another Corval dispositive motion, and delay trial.

The district court's reliance on the late stage of the proceeding and the resulting prejudice to Corval was proper under caselaw. *See Cybyske v. Indep. Sch. Dist. No. 196, Rosemount-Apple Valley*, 347 N.W.2d 256, 264 (Minn. 1984) (affirming district court's denial of a motion to amend because "[p]laintiff delayed over a year after the filing of her complaint, until the eve of defendants' summary judgment motion, to make her motion to amend"). Given the late stage and the potential prejudice, the district court did not clearly abuse its discretion in refusing to grant, sua sponte, FPD leave to amend its pleading.[2]

In sum, the district court properly limited its consideration of Corval's motion for summary judgment to the issue of whether FPD complied with the subcontract as written. On that point, there is no genuine issue of material fact. FPD acknowledges that the "undisputed evidence" establishes that it routinely submitted change-order requests "that did not strictly comply with or follow the procedures set forth in the parties' written subcontract." Because it is undisputed that FPD did not follow the change-order procedures in the subcontract as written, which was necessary to obtain additional compensation, the district court did not err by summarily dismissing FPD's counterclaim and granting Corval summary judgment on its declaratory-judgment action.

---

[2] The district court also reasoned that amendment would be futile, addressing the merits of FPD's equitable-estoppel, waiver, and contract-modification theories. We do not reach this ruling because it is unnecessary to our analysis.

11

We next consider FPD's argument that the district court erred by refusing to consider the sworn statement of a former Corval employee when ruling on summary judgment.

In its order granting summary judgment, the district court explained that the parties agreed to depose a former Corval employee, W.K., and stipulated to "the entry of a court order permitting issuance of a Colorado subpoena compelling [W.K.]'s attendance at a deposition." FPD's counsel obtained the subpoena, which was served on W.K. Because W.K. was not available on the deposition date noticed in the subpoena, FPD's counsel and W.K. agreed to an alternative date. After Corval's counsel declined that date due to short notice, FPD's counsel did not arrange a new date with opposing counsel. Instead, counsel asked W.K. if he would provide a "sworn statement" on the deposition date. W.K. agreed and provided sworn testimony before a court reporter. The district court concluded that, "[u]nder the circumstances, it is unlikely that [W.K.] understood the difference between a court-ordered deposition by subpoena and a voluntary sworn statement following service of a subpoena." The district court further concluded that counsel for FPD "abused the court's process by improperly leading the witness to believe that his attendance was court compelled." As a sanction, the district court ruled that "[W.K.'s] deposition is stricken from the record of this case."

"[C]ourts are vested with considerable inherent judicial authority necessary to their vital function—the disposition of individual cases to deliver remedies for wrongs and justice freely and without purchase; completely and without denial; promptly and

without delay, conformable to the laws.  The task of determining what, if any, sanction is to be imposed is implicated by the broad authority provided the trial court." *Patton v. Newmar Corp.*, 538 N.W.2d 116, 118-19 (Minn. 1995) (citations and quotations omitted). "This court reviews an award of sanctions under an abuse-of-discretion standard." *Frazier v. Burlington N. Santa Fe Corp.*, 788 N.W.2d 770, 782 (Minn. App. 2010), *rev'd on other grounds*, 811 N.W.2d 618 (Minn. 2012).

In its order imposing the sanction, the district court stated the following:

> The reprehensible manner in which the deposition was scheduled is further amplified by the secretive manner in which the subpoena and deposition notice were served, the way Corval's counsel was falsely led to believe that a deposition was still being arranged after it was already completed, and the fact that a completed deposition was covered up until after the discovery and dispositive motion filing deadlines passed.

FPD takes issue with the district court's treatment of W.K.'s statement as a "deposition," arguing that it was "little different than a sworn affidavit." Regardless of the district court's word choice, the district court based its ruling on FPD's secretive and deceptive conduct and the resulting abuse of the subpoena process.  Under the circumstances, the district court acted well within its discretion by striking W.K.'s testimony from the record.

**III.**

Lastly, we consider FPD's argument that the district court abused its discretion in awarding costs to Corval.  "An award of costs and disbursements has generally been allowed within the sound discretion of the trial judge.  As such, [appellate courts] review

13

for an abuse of that discretion." *Kellar v. Von Holtum*, 605 N.W.2d 696, 703 (Minn. 2000) (citation omitted).

FPD argues that "the district court improperly awarded Corval $57,378.00 for premiums it paid to secure a bond that discharged FPD's mechanic's lien . . . . This was not a necessary cost of the litigation and, therefore, is unreasonable." But the subcontract specifically provides:

> Should there be any . . . lien asserted before or after final payment is made that arises from [FPD's] Services, [FPD] shall reimburse [Corval] for any costs and expenses, including attorneys' fees, costs and expenses, incurred by [Corval] in satisfying, discharging or defending against any such . . . lien . . . provided [Corval] is making payments or has made payments to [FPD] in accordance with the terms of this Agreement.

Because the district court ruled that Corval did not owe FPD any additional payments under the subcontract, Corval had "made payments to [FPD] in accordance with the terms of [the] Agreement." Thus, under the plain language of the subcontract, Corval was entitled to reimbursement for the cost of the bond necessary to discharge the lien.

**Affirmed.**