*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0705**

Steven R. Saba,
Appellant,

vs.

City of Fridley, et al.,
Respondents.

**Filed December 19, 2016
Affirmed
Peterson, Judge**

Anoka County District Court
File No. 02-CV-15-1117

Karen E. Marty, Marty Law Firm, LLC, Bloomington, Minnesota (for appellant)

Pamela L. VanderWiel, Anna L. Yunker, Everett & VanderWiel, Rosemount, Minnesota (for respondents)

Considered and decided by Bratvold, Presiding Judge; Peterson, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**PETERSON**, Judge

In this appeal from summary judgment in a nuisance-abatement action, appellant-property owner argues that the district court erred in ruling that (1) the use of the property is not a legal nonconforming use, (2) respondent-city's past actions and agreement did not bar it from bringing a nuisance-abatement action, (3) Fridley City Code chapter 128 is not

unconstitutionally vague or overbroad, and (4) the city did not violate appellant's due-process rights in the abatement proceeding. We affirm.

## FACTS

Appellant Steven Saba and his parents moved to the property in respondent City of Fridley in 1954, and, a short time later, Saba's father began recycling washing machines and metal on the property. The record shows that various items, including cars, washing machines, scrap metal, wooden crates, and other miscellaneous items were stored in the back and side yards. Photographs and other evidence in the record show that the junkyard/scrapyard was in operation from shortly after May 1954 through January 2015. The photos and letters between the Saba family and the city show that the city has been trying to get the family to remove scrap metal and junk vehicles from the property since 1961. Photos taken in January 2015 show that Saba was still operating a junkyard/scrapyard on the property.

Under Fridley's 1949 zoning ordinance, as amended in 1953, the city was divided into three use districts: residential, commercial, and industrial. Due to missing maps, it is not clear how Saba's property was zoned when his family bought it in 1954. But a junkyard/scrapyard was only allowed in industrial districts, and a special-use permit was required. The record contains no evidence that a special-use permit was obtained before operation of the junkyard/scrapyard on the Saba property began or at any time during its operation.

In 1961, the city began efforts to end the operation of the junkyard/scrapyard. In 1984, the city issued a citation to Saba's mother alleging that she had maintained

2

unlicensed vehicles and refuse on the property. It appears that the Fridley city attorney negotiated an agreement with Saba's attorney to settle the criminal case against Saba's mother. A February 14, 1985 memorandum by the city attorney offered to continue the case for dismissal if Saba erected a fence around all of the scrap material. The memorandum did not state that the city would forgo future civil proceedings to enforce its nuisance ordinances.

Beginning in 1986 and continuing through 2008, the city undertook repeated efforts to enforce its nuisance ordinances against the property. In January 2009, the city attorney filed criminal charges against Saba, and a jury found him not guilty.

On July 1, 2011, and November 4, 2011, the city sent letters to Saba stating that the storage of scrap material violated the city's zoning ordinance and that the city would act to abate the nuisance if Saba did not remove the items. Saba appealed the city's code-enforcement decision to the City of Fridley Appeals Commission. A hearing before the appeals commission was postponed pending the outcome of a lawsuit that Saba filed against the city in district court. After the lawsuit was dismissed, an evidentiary hearing was conducted before the appeals commission on January 28, 2015. The appeals commission affirmed the city's code-enforcement decision. Saba appealed to the Fridley City Council, which affirmed the appeals commission's decision.

Saba then brought this action in district court against the city and two city employees challenging the decision and alleging other claims. The district court granted summary judgment for respondents. This appeal followed.

## DECISION

### I.

In order to overturn a municipality's decision on a zoning matter, the court must find that (1) the decision "was arbitrary and capricious," or (2) "the reasons assigned by the governing body do not have the slightest validity or bearing on the general welfare of the immediate area." *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn. 1983) (quotation omitted). A zoning decision is reasonable if "the reasons given by the body were legally sufficient and had a factual basis." *Id.* A reviewing court does "not give any special deference to the conclusions of the [district] court[], but rather engage[s] in an independent examination of the record and arrive[s] at [its] own conclusions as to the propriety of the city's decision." *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 180 (Minn. 2006).

A nonconforming use is legal and "must be permitted to remain or be eliminated through eminent domain" if it existed before the relevant zoning restrictions took effect. *Krummenacher v. City of Minnetonka*, 783 N.W.2d 721, 726 (Minn. 2010) (quotation omitted). Saba argues that, because "the city either never created or lost the maps identified in the 1949 and 1953 zoning ordinances," "it is impossible to tell whether all land in Fridley was zoned before 1954." The 1949 zoning ordinance, as amended in 1953, contains descriptions of the properties governed by the ordinance, and the city provided maps showing the areas governed by the ordinance. This evidence was sufficient to show that Saba's property was governed by the ordinance when his family bought it in 1954, and Saba presented no contrary evidence.

4

Citing *White v. City of Elk River*, Saba argues that the city had the burden of proving that the junkyard/scrapyard was not a legal use at any time during its existence. 840 N.W.2d 43, 49 (Minn. 2013). *White* is not on point. The holding in *White* was "that a landowner does not surrender the right to continue a nonconforming use by obtaining a conditional-use permit unless the landowner validly waives that right." *Id.* at 50. But, even if the city had the burden of proving that the junkyard/scrapyard was not a legal use at any time during its existence, the evidence of the city's efforts to enforce its nuisance ordinances against the property during a more than 50-year period was sufficient to satisfy that burden.

Saba also argues that the city should be bound by the 1985 agreement for a continuance for dismissal in the criminal case if Saba completely enclosed the junkyard items in a fenced area. Although the record does not show that the agreement was finalized, even if it was, the agreement did not preclude the city from pursuing future civil enforcement of its nuisance ordinance; it only resolved the 1985 criminal case.

The city's decision that the junkyard/scrapyard was not a legal nonconforming use was not arbitrary and capricious, and its reasons for seeking abatement were valid and affected the general welfare of the immediate area.

## II.

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo, to determine whether there are genuine issues of material fact and whether the

5

district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP,* 824 N.W.2d 622, 627 (Minn. 2012). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 76-77 (Minn. 2002). To withstand a summary-judgment motion, a party must present specific facts showing the existence of a genuine issue for trial; speculation is insufficient. *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn. 1995). Summary judgment may be granted if the party opposing summary judgment has the burden of proof on an essential element and fails to "present specific admissible facts showing a material fact issue." *Doe v. Archdiocese of St. Paul,* 817 N.W.2d 150, 163 (Minn. 2012) (quotation omitted).

The doctrine of governmental estoppel is not to be "freely applied against the government." *In re Westling Mfg., Inc.*, 442 N.W.2d 328, 332 (Minn. App. 1989) (quotation omitted), *review denied* (Minn. Aug. 25, 1989). A plaintiff seeking to estop a government from enforcing an ordinance bears a "heavy burden of proof." *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 291-92 (Minn. 1990).

> A local government exercising its zoning powers will be estopped when a property owner, (1) relying in good faith (2) upon some act or omission of the government, (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired. Stated somewhat differently, before plaintiff can be said to have made a significant investment deserving of judicial protection in a land use case, he must demonstrate expenditures that are unique to the proposed project and would not be otherwise usable.

*Id.* at 292 (quotation omitted).

Before applying this balancing test, the court must first look for the government's wrongful conduct. *Id.* at 293. Wrongful conduct in this context means "affirmative misconduct" or "malfeasance." *In re Westling*, 442 N.W.2d at 332; *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 771 (Minn. 2006). Malfeasance is "evil conduct or an illegal deed, the doing of which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful." *Jacobsen v. Nagel*, 255 Minn. 300, 304, 96 N.W.2d 569, 573 (1959) (quotation omitted). Mistakes and imperfect conduct are insufficient. *In re Westling*, 442 N.W.2d at 332.

Saba asserts that the city acted wrongfully by repudiating the 1985 agreement. But, as already discussed, there is no evidence that the city agreed to anything more than a continuance for dismissal in the criminal case, and the agreement did not exempt Saba from future civil enforcement of the city's nuisance ordinances. Because Saba failed to present sufficient evidence to create a genuine issue of material fact on whether the city acted wrongfully, the district court properly granted summary judgment for respondents on his claim of governmental estoppel.

Notwithstanding our conclusion that Saba failed to show wrongful conduct, we address the elements of the balancing test. On the first two elements, Saba argues that he built the fence in reliance on the city's promise that he would never be required to bring his property into compliance with the city's nuisance ordinances. But there is no record evidence that the city made such a promise. Even if there was such an agreement, the prosecutor did not have the authority to make a zoning decision. A zoning decision can be made only by the city council after notice and a public hearing. Minn. Stat. § 462.357

7

(2014). A party dealing with a governmental entity is presumed to know the law and to understand that he cannot rely on the conduct of a government agent who does not comply with the law. *In re Westling*, 442 N.W.2d at 333.

On the third element, "before plaintiff can be said to have made a significant investment deserving of judicial protection in a land use case, he must demonstrate expenditures that are unique to the proposed project and would not be otherwise usable." *Ridgewood Dev. Co.*, 294 N.W.2d at 292. The investment must be of a magnitude that "it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired." *Id.* (quotation omitted). The court also considers whether the equities advanced by Saba outweigh the public interest frustrated by the application of estoppel. *Id.* The only expenditure claimed by Saba was for construction of a wooden fence about 30 years ago. Saba's interest is the fence. The public interest is the abatement of nuisances that pose a threat to public health or safety or a fire hazard. The equities advanced by Saba do not outweigh the public interest.

Saba also argues that collateral estoppel and res judicata should apply because he was acquitted of a criminal charge. An acquittal of a criminal charge does not bar a later civil enforcement proceeding by a municipality. *See, e.g.*, *In re Kaldahl*, 418 N.W.2d 532, 533-35 (Minn. App. 1988) (holding that dismissal of criminal complaint had the same effect as an acquittal and did not bar a civil action by the government, "remedial in its nature, arising out of the same facts on which the criminal proceeding was based" (quotation omitted)).

8

**III.**

The city argues that Saba waived the void-for-vagueness and overbreadth issues by failing to raise them before the appeals commission. Because constitutional claims require judicial interpretation, an administrative proceeding is not a proper forum in which to raise those claims. *In re On-Sale Liquor License*, 763 N.W.2d 359, 371 (Minn. App. 2009). Saba raised these issues in the district court, and the district court addressed them.

*Vagueness*

"Courts should exercise extreme caution before declaring a[n] [ordinance] void for vagueness." *Hard Times Cafe Inc. v. City of Minneapolis*, 625 N.W.2d 165, 171 (Minn. App. 2001). The Due Process Clause of the Fourteenth Amendment prohibits vague statutes and, thus, vague ordinances. *Id.* "A[n] [ordinance] is void due to vagueness if it defines an act in a manner that encourages arbitrary and discriminatory enforcement, or the law is so indefinite that people must guess at its meaning." *Id.* (quotation omitted). Using general language in an ordinance does not make it vague. *Id.* "An entity challenging the constitutionality of a[n] [ordinance] on vagueness grounds must show the ordinance lacks specificity as to its own behavior rather than some hypothetical situation." *Id.* at 172 (quotation omitted).

Chapter 128 of the Fridley City Code states:

> The Council of the City of Fridley has determined that the health, safety, general welfare, good order and convenience of the public is threatened by certain exterior public nuisances on property within the City limits. It is declared to be the intention of the Council to abate such nuisances, and this Chapter is enacted for that purpose.

9

This Chapter shall apply to the abatement of public nuisances maintained exterior to the principal structure involving junk vehicles (as defined in Chapter 123), large commercial vehicles having a gross licensed weight over 12,000 pounds, which are in violation of the provisions of Chapter 506, and outside storage of materials, and equipment including, but not limited to, disused machinery, household appliances and furnishings, tires, automotive parts, scrap metal, lumber, and all other materials deemed to create an exterior public nuisance as described in 128.01.

Fridley, Minn., City Code ch. 128, § 128.01-.02 (2016).

Saba argues that the ordinance grants the city "unbridled discretion to declare something to be an exterior public nuisance." "Due process . . . does not require that a rule contain an explicit definition of every term." *In re Charges of Unprofessional Conduct Against N.P.*, 361 N.W.2d 386, 394 (Minn. 1985). The illustrative list of items in the ordinance is sufficient to limit the city's discretion in enforcing the ordinance and to put persons on notice of the ordinance's meaning.

Also, the court looks to the ordinance as applied in the case before it. *Hard Times Cafe*, 625 N.W.2d at 172. The abatement letter was sent to Saba on November 4, 2011. At the appeals commission hearing on January 28, 2015, photos of the property taken on November 16, 2011, and on January 21, 2015, were admitted into evidence. The photos taken in November 2011 show vehicles, including a truck that appears to be elevated on a platform or blocks, what appears to be a horse trailer, and the detached rear portion of a pickup truck. The photos also show tires, cinderblocks, items of machinery, and piles of miscellaneous items. The photos taken in January 2015 show the detached rear portion of a pickup truck, a large wooden frame, what appears to be a horse trailer, a pile of wooden

10

crates, a large ladder, and piles of miscellaneous items. The appeals commission found that Saba was operating a junkyard/scrapyard on his property and ordered abatement.

Saba argues that, even if his conduct violated the city code, it did not constitute a nuisance. But the ordinance defines certain types of exterior storage as public nuisances and contains an illustrative list of items that come within the category, including many of the items stored in Saba's yard. Saba argues that a city cannot define items as a nuisance absent evidence that the items are a health, safety, or fire hazard. Even if that is a requirement, the photographs submitted by the city are sufficient to meet the requirement.

*Overbreadth*

An ordinance "is overbroad on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights." *Dunham v. Roer*, 708 NW.2d 552, 565 (Minn. 2006) (quotation omitted), *review denied* (Minn. March 28, 2006). The overbreadth doctrine should be applied to invalidate a statute or ordinance "only if the degree of overbreadth is substantial. *State v. Macholz*, 574 N.W.2d 415, 419 (Minn. 1998). Saba has cited no authority to support the position that a property owner has the right to maintain a public nuisance. On the contrary, no taking occurs if a municipality uses its police power to abate a nuisance. *City of Minneapolis v. Meldahl*, 607 N.W.d 168, 172 (Minn. App. 2000), *overruled in part on other grounds by Zweber v. Credit River Twp.*, 882 N.W.2d 605 (Minn. 2016).

The district court did not err in concluding that the nuisance ordinance is not unconstitutionally vague or overbroad.

11

**IV.**

Whether an agency has violated a person's procedural due-process rights is a question of law that this court reviews de novo. *Sawh v. City of Lino Lake*s, 823 N.W.2d 627, 632 (Minn. 2012). Procedural due process requires that a party receive "adequate notice and an opportunity to be heard before being deprived of life, liberty, or property." *Christopher v. Windom Area Sch. Bd.*, 781 N.W.2d 904, 911 (Minn. App. 2010), *review denied* (Minn. June 29, 2010). Appellate courts conduct a two-step analysis to determine whether the government has violated an individual's procedural due-process rights:

> First, [the court] must identify whether the government has deprived the individual of a protected life, liberty, or property interest.... [I]f the government's action deprives an individual of a protected interest, then the second step requires [the court] to determine whether the procedures followed by the government were constitutionally sufficient.

*Sawh*, 823 N.W.2d at 632 (quotation and citation omitted).

Saba did not raise the notice issue in the complaint; he raised the issue for the first time in opposing summary judgment. "A party is bound by its pleadings unless other issues are litigated by consent." *Great Am. Ins. Co. v. Golla*, 493 N.W.2d 602, 605 (Minn. App. 1993). A party cannot assert a claim not in the complaint "by the simple expedient of asserting it in opposing summary judgment." *Id*. But, even if the notice issue is properly before this court, the 2011 abatement notice was adequate.

Saba also argues that he was not provided an adequate opportunity to be heard. The argument is not persuasive. Saba participated in a hearing before the appeals commission that went on for almost four hours; he was represented by counsel, called witnesses, and

12

presented evidence. Saba then appealed to the city council, which reviewed the appeals commission's decision.

Saba argues that his due-process rights were violated because the city provided old photographs of the property to the appeals commission and because there was a question about whether some lawn furniture was in use or was scrap material. The photos and letters between the Saba family and the city show that the city has been trying to get the family to remove scrap metal and junk vehicles from the property since 1961. The photos taken one week before the hearing before the appeals commission show that Saba was still operating a junkyard/scrapyard on the property. Given the history of the dispute between the city and the Saba family and the items listed in the ordinance, even if there was some question about whether lawn furniture was being used or was scrap material, Saba was provided adequate notice of what items needed to be removed or enclosed.

Saba argues that the city violated his rights by bringing up concerns about possible environmental pollution. But the appeals commission's decision does not refer to those concerns, and there was ample other evidence to prove that Saba was operating a junkyard/scrapyard on his property.

Saba objects to the mayor's comments during the city council's deliberations. The comments were made in the context of deciding Saba's appeal and were not admitted into the record as evidence.

*Substantive due process*

The doctrine of substantive due process is based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV,

13

§ 1. The doctrine "protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan,* 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted).

Saba supports his substantive-due-process claim by asserting that respondents' efforts to enforce the city code violated state laws, including contract law, collateral estoppel, and res judicata. A violation of state law, however, will not, by itself, support a substantive-due-process claim. *Northpointe Plaza v. City of Rochester*, 465 N.W.2d 686, 690 (Minn. 1991).

Saba asserts that respondent-city manager Julie Jones and respondent-community development director Scott Hickok made false statements at the appeals commission hearing. The issues go to the credibility of Jones's and Hickok's testimony and do not support a substantive-due-process claim.

Saba also argues that the city failed to produce documents from the 1985 criminal prosecution. The 1985 letter by the city attorney and a 1985 memorandum by the public works director about Saba's agreement to completely enclose the storage area with a fence in exchange for a continuance for a dismissal were admitted into evidence at the appeals commission hearing. Any court documents should have been available to Saba.

Because Saba failed to present sufficient evidence to create a genuine issue of material fact as to whether his procedural- or substantive-due-process rights were violated, the district court properly granted summary judgment for respondents on those claims.

**Affirmed.**